UNITED STATES of America, Appellee,

v.

Thomas DAVIS, a/k/a T; Xavier Smith, a/k/a Rome; Allen Walden; Reynaldo Madhere, a/k/a Peanut; Herman Green, Defendants,

Gene James Content, also known as Reggie, Defendant–Appellant.

No. 1290, Docket 91–1607.

United States Court of Appeals, Second Circuit.

Argued April 1, 1992.

Decided June 17, 1992.

Donald T. Kinsella, Asst. U.S. Atty., Albany, N.Y., for appellee,

William P. Fanciullo, Albany, N.Y., for defendant-appellant.

Before: MINER and McLAUGHLIN, Circuit Judges, and MARTIN, District Judge.[*]

McLAUGHLIN, Circuit Judge:

Eugene James Content appeals from a judgment of the United States District Court for the Northern District of New York (Gagliardi, *Judge*), convicting him of one count of conspiracy to possess and distribute cocaine, and one count of possession of cocaine in violation of 21 U.S.C. § 846 and 18 U.S.C. § 2. He also appeals from Judge Gagliardi's imposition of sentence of 188 months imprisonment. He raises two arguments: (1) evidence was improperly admitted at trial, violating his rights under the Fourth Amendment; and (2) the sentence imposed upon him is illegal.

## BACKGROUND

Working with a confidential informant, Drug Enforcement Administration ("DEA") agents Frederick R. Marano and Ulises Delgado followed Content through the streets of Troy, New York, and saw him make several cocaine sales. They followed Content to an apartment on Stowe Avenue, and arrested Content and another man—Reynaldo Madhere—when they emerged from the building.[1] Upon arresting Madhere, the agents took a beeper and a set of keys from him.

Based on information previously provided by the confidential informant, the agents drove Content and Madhere to the apartment of one Lamont Cleare at 25 Morrison Avenue. Leaving Content and Madhere in the car, the agents knocked on the apartment door and were let in by a man who said that he was a guest in the apartment, but that Cleare was not present.

Shortly thereafter, Cleare returned home; the agents identified themselves and searched him.

Cleare told the agent that he had given Content a key to the apartment and that Content had left some things in Cleare's footlocker, which was in Cleare's bedroom closet. At the agents' request, Cleare took Agent Delgado to the closet. When Delgado asked him for the key to the footlocker, Cleare said that he had given Content the only key. Cleare then gave Delgado permission to search the footlocker and, at Delgado's request, returned to the living room, leaving Delgado alone with the footlocker.

Agent Delgado then tried to open the footlocker, using, on a hunch, the smallest of the keys that he had confiscated earlier from Madhere. It worked. Rummaging through the footlocker, he found a number of personal items that Cleare later identified as his property, including photographs of present and former girlfriends, books, medicine, toothpaste and a toothbrush. He also found and peered into: (1) an unzippered green travel bag containing ziplock baggies, two Hamilton scales, cutting agents, red baggies, drug paraphernalia, rubber bands, a receipt with Content's name on it and other materials; (2) an open blue plastic bag with more drug paraphernalia, plastic bags, staples, red magic markers, a strainer and other items; and (3) an unlocked brown metal box that he opened to discover two scales, more plastic baggies and approximately 52.3 grams of cocaine.

The agents then called Cleare back in the room, and he pointed out which items belonged to him. Cleare stated that, while he had seen Content put the green bag in the trunk, he had never seen the blue bag or the metal box before. The district court found that both the bags and the metal box belonged to Content, and this is not challenged on appeal.

Content was subsequently charged, in an indictment that included five other defen-

---

[*] The Honorable John S. Martin of the United States District Court for the Southern District of New York, sitting by designation.

1. Madhere was arrested for possession of marijuana, which was discovered by the police during a pat-down.

dants, with conspiracy to distribute cocaine, and possession with intent to distribute the 52.3 grams of cocaine found in Cleare's footlocker. Content sought to suppress the evidence seized from the footlocker on the grounds that, although Cleare owned the footlocker, he had surrendered dominion to Content and that Cleare had no authority to consent to a search of Content's property in the footlocker.

At the suppression hearing, Cleare was called by the government to establish that he retained ownership and, at least, joint control over the footlocker. He testified that he owned the footlocker, that he could open it any time he wished "if [he] had to," and that he kept various personal items in it, including photographs of present and former girlfriends.[2] Cleare also testified that Content never asked him not to look inside the containers that Content had placed in the footlocker, and that "nothing could have stopped" him from inspecting them. He added that Content never forbade him to show the footlocker or its contents to others. Agent Marano, Agent Delgado, and Cleare himself, testified that Cleare had voluntarily consented to the search of the footlocker.

Judge McAvoy initially suppressed the evidence, finding that, while Cleare "could validly consent to the search of the trunk," he "could not validly consent to a search of the materials inside the trunk belonging to Content." Several weeks later, Judge McAvoy reconsidered his ruling in light of the Supreme Court's intervening decision in *Florida v. Jimeno*, —— U.S. ——, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). Based on *Jimeno*, Judge McAvoy found that the evidence was admissible, and accordingly, reversed his prior order.

The case was assigned to Judge Gagliardi for trial. Before trial, all defendants except Content pled guilty pursuant to plea agreements. At Content's trial, numerous witnesses testified about his role in the cocaine ring, and the evidence seized from Cleare's apartment was introduced. The

jury found Content guilty on both counts of the indictment.

## DISCUSSION

### I. *The Suppression Motion*

Content argues that the district court should have suppressed the evidence seized from the footlocker in Cleare's apartment. Specifically, he argues that: (a) Cleare's consent to the search was invalid because it was not voluntary; (b) Cleare did not have authority to consent to the search of the footlocker; and (c) that, even if Cleare did have sufficient authority to consent to the search of the footlocker, the consent was insufficient to authorize a search of the closed containers found therein and belonging to Content, rather than Cleare. For the reasons given below, we reject these arguments.

#### A.

For consent to a search to be valid, the totality of the circumstances must indicate that it was voluntarily given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 248–249, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). Because the trial court is in a unique position to evaluate witnesses' credibility, we will not reverse its determination on this issue unless the decision is "clearly erroneous." *United States v. Oguns*, 921 F.2d 442, 448 (2d Cir.1990).

Judge McAvoy's determination that Cleare's consent to the search was voluntary was not clearly erroneous. The testimony of the DEA agents and of Cleare himself, which indicated that Cleare voluntarily consented, amply support Judge McAvoy's finding.

#### B.

A more troublesome question is Cleare's authority to consent to the search of the footlocker. We assume, without deciding, that Content had a reasonable expectation of privacy in the trunk. There is, however, nothing new in the notion that a

---

**2.** Cleare, an accomplished Lothario, testified that he kept a complete collection of his girlfriends' pictures in the footlocker so that, on a

moment's notice, he could retrieve the appropriate photograph to be prominently displayed for the evening's festivities.

third party may validly consent to the search of an area in which another has a reasonable expectation of privacy where the third party shares common authority over the area. *United States v. Matlock*, 415 U.S. 164, 171, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974). We have held that a third-party consent to a search will validate the search if two prongs are present: first, the third party had access to the area searched, and, second, either: (a) common authority over the area; or (b) a substantial interest in the area; or (c) permission to gain access. *United States v. Gradowski*, 502 F.2d 563, 564 (2d Cir.1974) (per curiam); *see also United States v. Trzaska*, 859 F.2d 1118, 1120 (2d Cir.1988), *cert. denied*, 493 U.S. 839, 110 S.Ct. 123, 107 L.Ed.2d 84 (1989). We conclude that Cleare had sufficient authority to give valid consent to the search of the trunk.

With respect to the first prong, it is obvious that Cleare had "access" to the trunk—he lived in the apartment and he kept the trunk, which belonged to him, in his own bedroom. He testified that he could open the trunk any time he wanted "if [he] had to get into it," and that, while he allowed Content to store some items in the footlocker, he and Content had never made any agreement that Cleare could not look inside. That Cleare had given Content the only key did not, in this case, diminish Cleare's access to the footlocker, particularly where the lock could be opened easily with other keys.[3]

With respect to the second prong of the *Gradowski* test, we have no doubt that Cleare had a substantial interest in the footlocker; it was his trunk and he kept personal items of some importance in it. His testimony about the property he kept in the trunk—particularly the photographs of old girlfriends—militates against a finding that he had surrendered his interest in the trunk.

The evidence also indicates that Cleare had "common authority" over the footlocker. Although Content had the only genu-

ine key to it, Cleare's ownership and actual possession of the trunk in his bedroom, coupled with his ready access to it, indicate that, at the very least, he retained common authority over it. It follows, therefore, that Cleare could give a valid consent to the agents to open the footlocker.

### C.

■ We turn now to the most vexing feature of the case: whether Cleare's consent to search the footlocker extended to the closed containers belonging to Content that were found inside. Content argues that the search of those containers was illegal because the agents were purposely looking for his property and because the government failed to show that Cleare had common authority over those containers. In light of the Supreme Court's recent decision in *Florida v. Jimeno*, — U.S. —, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991), we reject Content's arguments.

In *Jimeno*, a police officer, who had been following a car driven by a suspected drug trafficker, stopped the car for a moving violation. The officer told Jimeno that he had reason to believe that Jimeno was carrying narcotics in the car and asked permission to search it. Jimeno consented, and the officer found cocaine inside a folded paper bag on the car's floorboard. The trial court subsequently suppressed the evidence on the ground that Jimeno's consent to search the car did not extend to the closed paper bag inside the car, and the Florida Supreme Court affirmed.

The Supreme Court reversed the suppression order, holding that:

[t]he standard for measuring the scope of the suspect's consent under the Fourth Amendment is that of 'objective' reasonableness—what would the typical reasonable person have understood by the exchange between the officer and the suspect? The question before us, then, is whether it is reasonable for an officer

---

3. We do not suggest that the extent of a defendant's protection under the Fourth Amendment is proportional to the quality of the container he uses to secure his belongings. Ease of access is

significant here only because it buttresses Cleare's testimony that, at the time he consented to the search, he could still get into his trunk whenever he wanted.

to consider a suspect's general consent to a search of his car to include consent to examine a paper bag lying on the floor of the car. We think it is.

*Jimeno,* 111 S.Ct. at 1803–04 (citations omitted). In reaching this conclusion, the Court noted that "[t]he scope of a search is generally defined by its express object." *Id.* (citing *United States v. Ross,* 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982)).

In this case, Cleare authorized Agent Delgado to search his footlocker and, like Jimeno, "did not place any explicit limitation on the scope of the search." *Jimeno* 111 S.Ct. at 1804. The agents had forthrightly told Cleare that they were searching for Content's property, and Cleare never indicated—until after the search—what items in the footlocker belonged to him, nor did he limit his consent to search to those items.

Content argues that *Jimeno* is inapposite because the consent there was given by a defendant who unquestionably had sole dominion of the car and, accordingly, *Jimeno* did not address the issue of a third-party consent. We accept the distinction but find it unpersuasive. *Jimeno* clearly states that the scope of a search pursuant to consent is cabined by the officer's reasonable belief as to the extent of the consent. Here, we agree with the district court that it was reasonable for the agents to consider Cleare's general consent to the search of the footlocker to include consent to examine the two open bags and the closed but unlocked metal box within the footlocker.

Content also argues that Cleare's consent did not authorize the search of the packages because the agents were expressly looking for Content's property. The argument, however, ignores the "assumption of the risk" approach adopted in *United States v. Matlock, supra:*

> The underpinning of third-party consent is assumption of risk. One who shares a house or room or auto with another understands that the partner may invite strangers—that his privacy is not absolute, but contingent in large measure on the decisions of another. Decisions of *either* person define the ex-

tent of the privacy involved, a principle that does not depend on whether the stranger welcomed into the [area] turns out to be an agent or another drug dealer.

*United States v. Chaidez,* 919 F.2d 1193, 1202 (7th Cir.1990) (applying *Matlock*) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 209, 116 L.Ed.2d 167 (1991). Similarly, the D.C. Circuit recently rejected a defendant's claim that the tenant of an apartment could not consent to the search of a bedroom whe.'e the defendant stayed:

> [c]ommon authority ... rests ... on material use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.

*United States v. Patrick,* 959 F.2d 991, 998 (D.C.Cir.1992) (*quoting United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 992, 39 L.Ed.2d 242 (1974)).

Here, Cleare's actual possession of the footlocker, and the fact that Content never prohibited Cleare from examining Content's containers therein, lead us to conclude that Content assumed the risk that Cleare would permit others to search the trunk and its contents.

In short, under *Matlock,* Cleare could give a valid consent to the search of the footlocker, and under *Jimeno* that consent was sufficient to allow the officers to search the two open bags and the closed but unlocked metal box found therein. The motion to suppress was properly denied.

## II. *The Sentence*

Content also challenges on several grounds, the sentence imposed upon him under the Sentencing Guidelines.

We have reviewed these claims, cognizant that we must "accept the findings of fact of the district court unless they are clearly erroneous and [that we must] ... give due deference to the district court's

application of the guidelines to the facts." 18 U.S.C. § 3742(e)(4) (1988); *see United States v. Santiago,* 906 F.2d 867, 871 (2d Cir.1990). On the record before us, we find no clear error or abuse of discretion in the district court's calculation and imposition of sentence.

## CONCLUSION

Accordingly, the judgment of the district court is hereby affirmed.

MINER, Circuit Judge, dissenting:

The contents of Content's three containers should have been suppressed as fruits of an unlawful search, notwithstanding the consent given by Cleare for the search of his trunk. Agent Delgado had no reasonable basis to conclude that Cleare's authority to consent to the search of the trunk included the authority to consent to a search of the containers. Because my colleagues hold otherwise, I respectfully dissent.

Third party consent to search premises and effects is justified where the property in question is used "by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the coinhabitants has the right to permit the inspection in his own right." *United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 993 n. 7, 39 L.Ed.2d 242 (1974). One who possesses with another common authority over property is said to assume the risk that the other might permit a search of the mutually used property. *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 1425, 22 L.Ed.2d 684 (1969). Accordingly, it is proper for police to obtain a search warrant based on incriminating documents seen in plain view in a room of an apartment where a joint tenant of the apartment has given permission to enter. *United States v. Cataldo,* 433 F.2d 38, 40 (2d Cir.1970), *cert. denied,* 401 U.S. 977, 91 S.Ct. 1205, 28 L.Ed.2d 326 (1971). Likewise, it is proper for government agents to search the cabinets and freezer of a laboratory on the authority of one who exercises joint control over those areas. *United States v. Buettner–Janusch,* 646 F.2d 759,

765–67 (2d Cir.), *cert. denied,* 454 U.S. 830, 102 S.Ct. 126, 70 L.Ed.2d 107 (1981).

On the basis of the foregoing, it seems clear that Cleare maintained joint authority with Content over the use of the trunk. Cleare gave Content permission to store items in the trunk and continued to store items there himself. There was "joint access or control for most purposes," *see Matlock,* 415 U.S. at 171 n. 7, 94 S.Ct. at 993 n. 7, and both possessed the common authority that conferred upon each one the power to consent to a search of the trunk. Moreover, it was reasonable for Agent Delgado to conclude that Cleare had authority to give consent, in view of the fact that the trunk obviously was a joint storage area. What was not reasonable was the agent's conclusion that Cleare had authority to consent to a search of the containers that did not belong to him.

A warrantless search of premises or effects on the consent of a third party is lawful only if "the facts available to the officer at the moment [would] 'warrant a man of reasonable caution in the belief' that the consenting party had authority over the premises." *Illinois v. Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 2801, 111 L.Ed.2d 148 (1990) (citation omitted). The burden of proof is on the government in this respect, and that burden is not necessarily met by an assurance from the third party that he has the authority to consent. *See id.* In any event, Cleare never said that he had the authority to consent to a search of the green travel bag, the blue plastic bag or the brown metal box belonging to Content and found in the jointly used trunk.

Nor was there any other reasonable basis for Agent Delgado to conclude that Cleare had the authority to consent to a search of these containers. The evidence was quite to the contrary. Delgado was well aware that Content had stored property in the trunk; knew that the only key to the trunk was in Content's possession; never sought nor received specific permission from Cleare to inspect the containers belonging to Content; and excluded Cleare from the room while he conducted the

search. It was not until the search was completed that Cleare was invited back into the bedroom and asked only to identify his own property out of all the items spread out on the floor. By that time, of course, the incriminating items in the three containers already had been discovered. Cleare had never even seen the blue bag or the metal box before that time, let alone given permission to search them.

We recently held that a landlord who was authorized to enter a tenant's apartment when necessary to turn off electrical appliances or lights because of an electrical short circuit is not by that token entitled to consent to a search of the apartment itself. *United States v. Brown*, 961 F.2d 1039 (2d Cir.1992). It seems to me that this determination compels the conclusion that Cleare's authority to consent to a search of the trunk did not carry with it the authority to consent to a search of the containers that Content without doubt intended to keep private. It is not sufficient to say that Cleare had a joint interest in the containers simply because they were in the trunk and because Content never specifically told Cleare he could *not* rummage through them.

I think that my colleagues are wrong to rely so heavily upon *Florida v. Jimeno*, — U.S. —, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). As they note, *Jimeno* did not address the issue of third party consent. The court did decide in that case that where a driver invites the search of an automobile, saying he has "nothing to hide," it is reasonable for the officers to believe that the consent extends to a paper bag lying on the passenger side. Police given permission by the driver to search an entire car need not request separate permission to search each container within. Based on *Jimeno*, my colleagues "agree with the district court that it was reasonable for the agents to consider Cleare's general consent to the search of the footlocker to include consent to examine the [containers] within the footlocker." At 88. But that is not the proper inquiry. The inquiry, according to *Rodriguez*, is whether it was reasonable for the agents to conclude that Cleare had *authority* to consent

to a search of the *containers* within the footlocker. Because Cleare had no such authority and the officers had no basis for believing that he did, I think that the conduct here crossed the line into a Fourth Amendment violation.