101 F.3d 1393
 NOTICE: THIS SUMMARY ORDER MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY, BUT MAY BE CALLED TO THE ATTENTION OF THE COURT IN A SUBSEQUENT STAGE OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA. SEE SECOND CIRCUIT RULE 0.23.
Hasan AKSOY, Defendant-Appellant,
v.
UNITED STATES of America, Appellee.
 No. 96-1114.
 United States Court of Appeals, Second Circuit.
 Aug. 14, 1996.
 
 Appearing for Appellant: Kevin J. Keating, Garden City, NY.
 Appearing for Appellee:Burton T. Ryan, Assistant U.S. Attorney, E.D.N.Y., Brooklyn, NY.
 Present MESKILL, CALABRESI, PARKER, Circuit Judges.
 
 ORDER
 
 1
 On September 29, 1993, Aksoy mentioned to a Customs Special Agent posing as a Customs inspector that one Nazmiye Karamahmutoglu wanted to meet with corrupt customs inspectors to discuss smuggling hundreds of Turkish aliens into the United States. One week later, on October 5, Aksoy, Monique Aksoy, Karamahmutoglu, her husband Necati Karamahmutoglu, the Customs Special Agent, and a DOJ Special Agent posing as an INS inspector met in a diner. Karamahmutoglu made a proposal to the undercover agents wherein she would pay the agents a total of $85,000 over a period of time for their assistance in a scheme to smuggle twenty illegal aliens into this country. As the details of the exchange were arranged, Monique Aksoy took notes and wrote down the terms of the agreement. Without any dissent from Aksoy, she informed the agents that Aksoy would handle all the transactions. On October 7, Aksoy stated to an undercover agent that Karamahmutoglu would need a store-front office operation and a secretary to handle the anticipated increase in their smuggling operation. Aksoy also informed the agent that he wanted a separate agreement with the inspectors that would involve stamping the passports of two Turkish illegal aliens. On April 20, 1994, Aksoy met with one of the agents and was arrested while tendering $2,000 to the agent for those two immigration visas. Aksoy had also promised to pay $6,000 more when the visas were delivered.
 
 
 2
 The pre-sentencing report ("PSR") recommended that Aksoy be held accountable for two bribes totaling $93,000: the bribe for the two immigration visas to which he pled guilty (comprised of the $2,000 he paid and the additional $6,000 he promised) and the bribe for the $85,000 promised in the diner. Accordingly, the base offense level of 10 for bribery of a public official (U.S.S.G. § 2C1.1) was enhanced two levels for involvement in more than one bribe (U.S.S.G. § 2C1.1(b)(1)) and six levels because the two bribes amounted to more than $70,000 (U.S.S.G. §§ 2C1.1(b)(2)(A), 2F1.1). It was then decreased three levels for Aksoy's acceptance of responsibility (U.S.S.G. §§ 3E1.1(a), 3E1.1(b)(1)). Aksoy's total offense level was thus 15. In his criminal history category of one, this offense level placed him in a guideline range of 18 to 24 months. The Department added that the court could consider a downward departure for Aksoy's cooperation, since the government had filed a motion pursuant to U.S.S.G. § 5K1.1. Based on this report, the district court sentenced Aksoy to six months imprisonment.
 
 
 3
 The only question presented on appeal is whether the district court erred in its finding that the second bribe, which resulted in both enhancements, was part of Aksoy's relevant conduct. A reviewing court "must accept the findings of fact of the district court unless they are clearly erroneous and ... give due deference to the district court's application of the guidelines to the facts." United States v. Davis, 967 F.2d 84, 88-89 (2d Cir.), cert. denied sub nom., Content v. United States, 506 U.S. 928 (1992). This Circuit has noted that "Section 1B1.3 includes within a defendant's relevant conduct the acts of another person that were within the scope of criminal activity jointly undertaken by the defendant and the other person and were foreseeable to the defendant." United States v. Thompson, 76 F.3d 442, 455 (2d Cir.1996) (citing U.S.S.G. § 1B1.3(a)(1)(B) and United States v. Studley, 47 F.3d 569, 574 (2d Cir.1995)). In making this determination "the court may consider any explicit agreement or implicit agreement fairly inferred from the conduct of the defendant and others." U.S.S.G. § 1B1.3 comment (n.2).
 
 
 4
 The district court's finding that the $85,000 bribe was within the scope of criminal activity jointly undertaken by Aksoy and Karamahmutoglu and foreseeable to Aksoy is not clearly erroneous. It was based on the facts that (1) Aksoy was instrumental in getting the Karamahmutoglus together with the undercover agents; (2) Aksoy was present at the meeting at which the $85,000 bribe was made and accepted, and did not object when Monique Aksoy told the agents that he would handle all transactions with the agents; and (3) Aksoy told the agents that Karamahmutoglu would set up a store-front for the operation. These facts provide ample evidence for the trial court's finding.
 
 
 5
 Aksoy makes three arguments on appeal. First, Aksoy contends that "mere presence is not enough" to establish a defendant's membership in a conspiracy. This is of course true, but it is irrelevant where, as here, more than Aksoy's mere presence is being alleged and "all the circumstances considered together show that by his presence he meant to advance the goals of [a] conspiracy." United States v. Giraldo, 80 F.3d 667, 673 (2d Cir.1996) (citing United States v. Gordils, 982 F.2d 64, 71 (2d Cir.1992), cert. denied, 507 U.S. 1054 (1993)). Second, Aksoy maintains that Monique Aksoy's statement that Aksoy would handle all transactions is hearsay. This, too, is irrelevant, as this Circuit has noted that a district judge has discretion to consider hearsay statements in sentencing. United States v. Romano, 825 F.2d 725, 728 (2d Cir.1987). Finally, Aksoy takes issue with the fact that the PSR stated that Aksoy told the agent that the store-front was needed to handle "their" (meaning Aksoy's and Karamahmutoglu's) business. He contends that the use of the word "their" is never elaborated upon, and that there is nothing in the PSR to substantiate the inference that Karamahmutoglu's business became Aksoy's business. Yet Aksoy did not dispute this fact at his sentencing and repeatedly ignored the court's suggestion that he seek a hearing to flesh out the facts or put forth his own facts. Moreover, as the government points out, whether Aksoy used the word "their" or "the," this statement still indicates that he was aware of the scope of the conspiracy and was a knowing participant in it.
 
 
 6
 We have examined Aksoy's other contentions, and find them to be without merit. The district court's judgment is therefore affirmed.