UNITED STATES of America,

v.

Mark L. SIMONS, Defendant.

No. CR–98–0375–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 28, 2000.

David Hackney, Assistant U.S. Attorney, Alexandria, VA, for plaintiff.

Marvin D. Miller, Alexandria, VA, for defendant.

### *MEMORANDUM OPINION*

CACHERIS, District Judge.

In *United States v. Simons,* 206 F.3d 392 (4th Cir.2000), the Fourth Circuit upheld this Court's ruling denying a motion to suppress pornography found on Defendant's office computer. The Fourth Circuit remanded this case "for the district court to consider whether the Government intentionally and deliberately disregarded the notice provisions of Rule 41(d) when it carried out a August 6, 1998, search." *Id.* at 402. For the reasons set forth below, the Court finds that the Government did not intentionally and deliberately violate Rule 41(d) of the Rules of Criminal Procedure.[1]

---

1. Simons was sentenced to ten months of imprisonment for receipt of child pornography and possession of child pornography.

## I.

Simons was employed as an electrical engineer in an information services department ("FBIS") at the Central Intelligence Agency ("CIA"). During his employment, Defendant had an office and a computer with Internet access. FBIS' policy prohibited employees from accessing unlawful material while on the Internet for official government business. FBIS contracted with Science Application International Corporation ("SAIC") for the management of FBIS's computer network and to monitor inappropriate use. On July 17, 1998, SAIC discovered a large number of Internet "hits" on sites containing pictures of nude women that were traced back to Simons' computer. SAIC examined Simons' computer and the downloaded picture files contained therein. Over one thousand files were found that were pornographic in nature.

On July 31, 1998, two representatives from the CIA's Office of the Inspector General ("OIG") detected files on Simons' hard drive containing pictures of minors and removed the original hard drive. The original was given to an FBIS security officer and replaced with a copy. The security officer turned over the hard drive to an Assistant Inspector General ("AIG") that same day.

On August 5, 1998, Federal Bureau of Investigation ("FBI") Special Agent John Mesisca, viewed fifty images containing child pornography located on the hard drive removed from Simons' office. Mesisca, SAIC employee Robert Harper, and two OIG representatives then contacted the United States Attorney's office in the Eastern District of Virginia. Assistant U.S. Attorney ("AUSA") Rob Chesnut asked AUSA Tom Connolly to prepare a search warrant application to handle the matter. An affidavit was prepared by Connolly, which expressed a need to conduct the search in secret. At that time, fifty-four pictures had been taken from Defendant's hard drive. Mesisca stated that the intent was to have a surreptitious warrant executed to make copies of the hard drive. (Transcript of May 18, 2000 Evidentiary Hearing at 8, 9, 10.)

A search warrant was drafted on August 5, 1998. On August 6, 1998, the search warrant was signed by Magistrate Judge Buchanan and executed. Simons' office was entered at 6:58 p.m. (*Id.* at 45.) Photos were taken, sketches were made of the office, and the search was performed. At that time, the material was copied. However, neither a copy of the search warrant nor an inventory of the property taken was left in the office because Mesisca thought that it was a surreptitious search that could be executed without leaving such documentation for Simons. (*Id.* at 14.)

Connolly testified that he wanted to conduct a surreptitious search: "my assumption was going to be that it would be done surreptitiously." (*Id.* at 54–55.) Connolly believed that he told the agents that they had a surreptitious search warrant. (*Id.*) The search warrant affidavit itself provided: "Moreover, given the nature of Mr. Simons' employment, and the associated need to conduct the search secretly, we will be required to conduct the search of his office and computer quickly." (August 6, 1998 Affidavit by Special Agent John Mesisca ¶ 20.) Mesisca stated that he believed that it was a surreptitious search warrant. (Transcript of May 18, 2000 Evidentiary Hearing at 24.)

At the time of the search, Connolly, now in private practice, had been an AUSA in the Eastern District of Virginia and in the District of Columbia for a total of ten years. (*Id.* at 52.) This was the first time that he had dealt with a surreptitious search warrant. Simons' emails were not viewed. The first hard drive was taken out and a second drive was taken in six to ten days.

At the time of the search, SAIC employee Harper was present. Harper was also involved in the preparation of the affidavit. (*Id.* at 81.) Connolly testified that he typed the affidavit on a computer and told

the agents that it was a surreptitious search warrant. (*Id.* at 56, 57.) Connolly wanted a surreptitious search warrant because he didn't want Simons to be alerted to the investigation, thereby giving him motivation and opportunity to erase the hard drive. The Government also wanted to be able to see if Simons was communicating with young girls. Finally, the Government did not want to alert other employees to the ongoing investigation. (*Id.* at 55.)

## II.

■ The moving party has the burden to prove that suppression is proper. *United States v. Chaar*, 137 F.3d 359, 363 (6th Cir.1998). The burden on a motion to suppress is proof by a preponderance of the evidence. *United States v. Matlock*, 415 U.S. 164, 178 n. 14, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

## III.

Federal Rule of Criminal Procedure 41(d) provides:

> The officer taking property under the warrant shall give to the person from whom or from whose premises the property was taken a copy of the warrant and a receipt for the property taken or shall leave the copy and receipt at the place from which the property was taken.

Failure to comply with this mandate constitutes a violation of the rule.

■ The Fourth Circuit has stated that there are two types of Rule 41 violations: "constitutional violations, and all others." *Simons*, 206 F.3d at 403 (citations omitted). Ministerial violations fall into the latter type of violation. *Id.* Non-constitutional violations warrant suppression only when the defendant is prejudiced by the violation or when there is evidence of intentional or deliberate disregard for the Rules. *Id. See United States v. Negrete–Gonzalez*, 966 F.2d 1277, 1283 (9th Cir. 1992).

■ In this case, the Fourth Circuit held that the Government's failure to leave a copy of the warrant or a receipt of the property taken did not render the search unreasonable under the Fourth Amendment. *Id.* However, the court remanded this case for the express purpose of having this Court determine "whether Rule 41(d) was intentionally and deliberately disregarded" by the Government. *Id.* at 403–04.

Although its precise meaning remains elusive, it is well-settled that the word "willfulness" denotes an act which is intentional, deliberate, or voluntary, as distinguished from an act which is accidental or negligent. *See Screws v. U.S.*, 325 U.S. 91, 101, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (citations omitted); *United States v. Murdock*, 290 U.S. 389, 394, 54 S.Ct. 223, 78 L.Ed. 381 (1933) (citations omitted). *See also* Devitt, Blackmar, Wolff & O'Malley, Fed. Jury Prac. & Instr. § 17.05 (5th ed.); Black's Law Dictionary 1434 (5th ed.1979).

After reviewing the evidence and assessing the credibility of the witnesses, the Court finds that Mesisca, Harper, and Connolly all are found to be credible witnesses. The evidence shows that a violation of Rule 41(d) did occur. However, the Court finds that Mesisca and Connolly thought that they had a surreptitious search warrant and that leaving a copy of the warrant or an inventory of the property taken was not necessary. As such, the Government's actions in this case were, at most, negligent.

It is clear that mere negligence does not rise to the level of being a willful violation. In other words, this case involved an accident, or negligence, which the plain definition of "willful" excludes from its meaning. As such, the Court finds that the Government did not intentionally or deliberately disregard Rule 41(d).

■ Moreover, there is no evidence that Defendant was prejudiced by the Rule 41(d) violation. Although the Fourth Circuit did not direct this Court to make such

a finding, the Court does so sua sponte in order to avoid any need to revisit this issue at a later time.[2] The Rule 41(d) violation in this case involved only the lack of subsequent notice to Defendant. In other words, the violation occurred after-the-fact: the search was proper up and until the Government agents exited Defendant's office without leaving a copy of the search warrant or an inventory of the property taken.

Prejudice in this sense involves whether the search would have occurred at all, or would have been narrower in scope. *See United States v. Stefanson*, 648 F.2d 1231, 1235 (9th Cir.1981). The Court finds that the violation in this case had no bearing on the occurrence of the search or its scope. As such, Defendant suffered no prejudice as a result of the Government's Rule 41 violation.

### IV.

For the forgoing reasons, the Court finds that the Government did not intentionally or deliberately disregard Rule 41(d). An appropriate Order will issue.

---

**2.** As noted above, there are two inquiries required to determine whether a non-constitutional violation warrants suppression: (1) intentional or deliberate disregard of the rule; or (2) prejudice resulting from the violation. *See Simons*, 206 F.3d at 403; *Negrete–Gonzales*, 966 F.2d at 1283.