**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

BRANDON SCOTT YOUNG,
            *Defendant-Appellant.*

No. 02-4699

Appeal from the United States District Court
for the Northern District of West Virginia, at Clarksburg.
Irene M. Keeley, Chief District Judge.
(CR-02-29)

Argued: June 5, 2003

Decided: July 24, 2003

Before WILKINS, Chief Judge, WIDENER, Circuit Judge, and
Robert R. BEEZER, Senior Circuit Judge of the
United States Court of Appeals for the Ninth Circuit,
sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Thomas William Kupec, MICHAEL & KUPEC, Clarksburg, West Virginia, for Appellant. Stephen Donald Warner, Assistant United States Attorney, Elkins, West Virginia, for Appellee. **ON BRIEF:** Thomas E. Johnston, United States Attorney, Elkins, West Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Brandon Scott Young appeals the denial of a motion to suppress evidence obtained in a search of a vehicle in which he was a passenger. Finding no error, we affirm.

I.

On March 7, 2001, Sergeant Charles F. Trader, III, of the West Virginia State Police, was in his patrol vehicle positioned in the median on Interstate 79. From this vantage point, Trader observed a small Cadillac with a Florida license plate driving in the left northbound lane with no other vehicles around it.

Suspecting possible drug activity, Trader pulled into the northbound passing lane of I-79 and accelerated until he came within one and a half car lengths of the Cadillac. Apparently seeing the patrol vehicle, the driver moved into the right-hand lane and then activated his right turn signal. Trader observed that one of the two brake lights on the Cadillac was not working. Trader activated his blue lights and pulled the Cadillac to the side of the interstate.

Trader exited his vehicle and walked to the driver's side of the Cadillac. The driver, Ryan Lance Gross, stated that he and his companion were lost. At Trader's request, Gross provided his driver's license, registration, and proof of insurance. Trader then directed Gross to come back to his police vehicle. When Gross exited the Cadillac, Trader patted him down and asked him if he had any drugs on his person. The men then entered the front seat of the police vehicle. While Trader called in Gross's license and registration and waited for a response, he asked Gross where he was going and whom he was going to visit. Gross initially told Trader that he would be visiting an uncle but later stated he would be visiting a cousin. Trader also

inquired about the drug trade in Florida. Gross maintained that he had no drugs.

Within a few minutes, Trader told Gross that he was going to walk a drug-sniffing dog that he had in the back of his vehicle around the Cadillac and asked Gross if the dog would alert. Trader also asked several times if he could search Gross's vehicle. Gross maintained that the dog would not alert, but refused to give Trader permission to search the interior of the Cadillac. Gross did state at one point, however, that Trader could take his dog around the outside of the Cadillac.

When Trader's check of Gross's records was complete, Trader issued him a warning ticket for changing lanes without signaling and instructed Gross to remain in the patrol vehicle. Trader then walked to the passenger side of the Cadillac and spoke briefly with Young. Trader informed Young that he was going to let his dog sniff around the Cadillac and asked Young if he had anything that would cause the dog to alert. Young admitted that he had a small amount of marijuana in a bag behind the seat for personal use. Based on this admission, Trader arrested Young for marijuana possession and searched the Cadillac incident to Young's arrest. The search uncovered 2,999 grams of marijuana.

Young was subsequently indicted on one count of possession of marijuana with the intent to distribute. *See* 21 U.S.C.A. § 841(a)(1) (West 1999). Young moved unsuccessfully to suppress the marijuana both on the ground that the initial stop was not supported by probable cause and on the basis that Trader's questioning of Gross regarding drug possession was unconstitutional. The court ruled that the initial stop was permissible since Trader was justified in stopping Gross because of his nonoperational brake light and because Trader had probable cause to believe Gross had committed a traffic violation by changing lanes without signaling. The court further held that Young lacked standing to challenge Trader's drug-related questioning of Gross. Following the denial of his motion to suppress, Young entered a conditional plea of guilty to possession of marijuana with the intent to distribute and was sentenced to three years probation.

## II.

Young first argues that the district court erred in ruling that Trader's initial stop of the Cadillac was constitutionally permissible. We disagree.

A stop is constitutionally permissible if a law enforcement officer has probable cause to believe that the motorist has committed a traffic violation. *See Whren v. United States*, 517 U.S. 806, 810 (1996). That the traffic violation is not the primary reason that the officer stopped the motorist does not affect the validity of the stop. *See id.* at 813. In reviewing rulings on suppression motions, we review fact findings for clear error and the application of the law to those facts de novo. *See United States v. Simons*, 206 F.3d 392, 398 (4th Cir. 2000).

In challenging the determination of the district court that Trader was justified in stopping the Cadillac because of the nonoperational brake light, Young relies on the fact that West Virginia law does not require that a vehicle be equipped with two brake lights; a single stop lamp is sufficient. *See* W. Va. Code Ann. § 17C-15-18(a)(1) (Michie 2000) (requiring that vehicles be equipped with "[*a*] stop lamp on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake") (emphasis added). Even assuming, though, that a single brake light located in the middle of the rear of the vehicle would satisfy that statutory requirement, Trader had probable cause to believe that Young had violated another subsection of the same statute. West Virginia law requires that "[a] stop lamp shall be plainly visible and *understandable* from a distance of one hundred feet to the rear." W. Va. Code Ann. § 17C-15-18(b) (Michie 2000) (emphasis added). Also, "[w]hen a vehicle is equipped with a stop lamp or other signal lamps, such lamp or lamps shall at all times be maintained in good working condition." *Id.* Because one of the two brake lights was not operational, Trader could have reasonably concluded that the other brake light, though plainly visible, was not plainly *understandable* because it could easily have been mistaken for a turn signal. Moreover, Trader could have reasonably concluded that the stop lamps with which the Cadillac was equipped were not in "good working condition." *See State v. Jihad*, 553 S.E.2d 249, 250-51 (S.C. 2001) (interpreting statutory language essentially identical to that in § 17C-15-18(b) to require that even if only one brake

light is required, all such lights must be operational if vehicle is equipped with more than one light). Thus, Trader was justified in making the initial stop.*

## III.

Young next contends that even if Trader's initial stop of the Cadillac was constitutionally permissible, Trader's questioning of Gross concerning drug possession exceeded constitutional bounds. We need not decide whether the drug-related questioning was impermissible, however, because even if it was, the district court ruled that Young lacked standing to assert that it was unconstitutional, and Young has waived any argument challenging that ruling. *See Carter v. Lee*, 283 F.3d 240, 252 n.11 (4th Cir.) ("[T]his Court normally views contentions not raised in an opening brief to be waived."), *cert. denied*, 123 S. Ct. 196 (2002).

## IV.

In sum, we affirm the district court order denying suppression of the evidence recovered in the vehicle searches because (1) the original stop was permissible and (2) Young has waived any challenge to the conclusion of the district court that he lacked standing to assert that Trader's drug-related questioning was unconstitutional.

*AFFIRMED*

---

*Although the district court did not base its decision on a conclusion that Trader had probable cause to believe that Gross had violated § 17C-15-18(b), we may "affirm on any ground fairly supported by the record." *Korb v. Lehman*, 919 F.2d 243, 246 (4th Cir. 1990).

We note that Young also challenges the conclusion of the district court that Trader had probable cause to believe that Young had committed a traffic violation by changing lanes without signaling. Because the stop was justified for the reasons discussed above, we do not address this issue.